***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications and the award of attorney's fees to plaintiff pursuant to N.C.G.S. § 97-88; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured and The Schaffer Companies, Ltd., is the Third Party Administrator.
4. Plaintiff sustained injuries by accident arising out of and in the course of his employment with defendant-employer on February 23, 2000 and January 11, 2001.
5. Plaintiff's average weekly wage for IC Claim No. 150854 is $683.55.
6. Plaintiff's average weekly wage for IC Claim No. 187411 is $632.66.
7. Plaintiff's medical records were stipulated into evidence as a portion of Stipulated Exhibit 1.
8. Industrial Commission Forms and filings were stipulated into evidence as parts of Stipulated Exhibit 1.
9. The issues before the Full Commission are: (i) whether plaintiff is entitled to compensation as result of these claims; (ii) whether plaintiff is entitled to permanent disability compensation as result of the compensable injuries; and (iii) whether defendant is obligated to pay for medical treatment provided by Mark Rodger, M.D., Paul Chipley, M.D., and Columbus Physical Therapy Associates.
10. The depositions of Robert Mark Rodger, M.D., and Alan Tamadon, M.D. are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was forty-five (45) years old and had been working for defendant-employer for seventeen (17) years. Plaintiff was working as a stick placer for approximately nine (9) to ten (10) years before being promoted to the job of mechanic. As a mechanic, plaintiff is required to perform heavy labor, including pushing, pulling, bending, lifting and climbing ladders. Plaintiff would periodically provide overtime for defendant-employer.
2. On March 4, 1997, plaintiff sustained a compensable injury by accident to his low back. Plaintiff was treated by several physicians relating to this injury and eventually underwent a lumbar diskectomy on July 18, 1997. Dr. Mark Rodger performed this surgery.
3. Plaintiff returned to work after the surgery for his March 4, 1997 injury in July 1998.
4. On September 8, 1998, Dr. Rodger assigned plaintiff a ten (10%) permanent partial disability to his spine. Dr. Rodger also restricted plaintiff to light duty with no lifting over thirty-five (35) pounds and no repetitive bending, stooping or climbing.
5. Following plaintiff's return to work plaintiff entered into a compromise settlement agreement with defendant-employer that was subsequently approved by the North Carolina Industrial Commission. At the time of the settlement, plaintiff was subject to restrictions prescribed by Dr. Rodger which restricted plaintiff to working no more than eight (8) hours a day. In the compromise settlement agreement, plaintiff waived his rights to recover further benefits for wage loss as result of this restriction.
6. Following his return to work in July 1998, plaintiff adhered to his work restrictions as much as possible. However after plaintiff had returned to work, plaintiff's supervisor, Donald Clark, placed plaintiff on a schedule to work more than eight (8) hours per day. Plaintiff questioned Mr. Clark about being placed on this work schedule which was in excess of his restrictions. Plaintiff was informed he needed to work the schedule assigned and did work more than eight (8) hours a day for a period of time after his return to work in July 1998. Plaintiff's supervisors were aware of his restrictions; nevertheless, he was scheduled for shifts that exceeded eight (8) hours.
7. On February 23, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he was pushing a wrench to loosen some bolts. As he did so, plaintiff felt a sharp pain in the middle of his back. Plaintiff did not move for a period of time and was helped to the maintenance office by Ennis Sanders.
8. Plaintiff reported his injury immediately after it had occurred and was sent for treatment at Medac Corporate Health Services. Plaintiff was seen by Dan Shapiro, P.A., who diagnosed him with a lumbosacral strain. Plaintiff received pain medication, was referred to physical therapy, and was released to return to work with the restrictions of no lifting over ten (10) pounds and avoiding stooping, bending, crouching, or climbing.
9. On April 3, 2000, plaintiff was referred to Dr. Alan Tamadon, M.D., a physiatrist, for an evaluation. Dr. Tamadon diagnosed plaintiff with a lumbosacral strain without clinical evidence of radiculophahy or neuromusculoskeletal instability and recommended further electrical diagnostic studies.
10. After the diagnostic studies had been performed, Dr. Tamadon indicated plaintiff had no evidence of recurring disc disease or nerve damage. Dr. Tamadon indicated plaintiff was at maximum medical improvement and released him from his care.
11. Plaintiff received conservative treatment from Dr. Mark Rodger from March 29, 2000 through May 26, 2000 for symptoms resulting from the February 23, 2000 injury. On March 29, 2000, plaintiff presented to Dr. Rodger with pain in his right buttock. Dr. Rodger felt plaintiff had probably re-injured his disc at L5-S1 on the right and wrote him out of work for a couple of weeks.
12. On April 17, 2000, Dr. Rodger ordered an MRI after having been notified of Dr. Tamadon's release. The MRI of plaintiff's back indicated there was no evidence of physical pressure on a nerve that would require surgery. Dr. Rodger prescribed an additional course of physical therapy and released plaintiff to return to work with his prior restrictions.
13. On May 26, 2000, plaintiff was feeling better and Dr. Rodger indicated plaintiff was at baseline, or in the same condition as he was prior to his February 23, 2000 injury.
14. Plaintiff lost no time from work as a result of his injury by accident on February 23, 2000. Dr. Rodger indicated plaintiff's work related injury on February 23, 2000 very likely caused the symptoms for which plaintiff presented and required treatment. Plaintiff's condition did improve as a result of Dr. Rodger's treatment.
15. Initially, plaintiff's February 23, 2000 claim was denied by defendant-employer but was subsequently accepted on September 20, 2002.
16. On January 11, 2001, plaintiff was standing on the fourth step of a ladder working on a Prentiss loader when the loader moved. As the loader moved, it struck the ladder upon which plaintiff was standing. Plaintiff fell from the ladder landing with his feet on the ground and his right arm hung over the handrail. Plaintiff reported this injury to defendant — employer immediately.
17. Plaintiff indicated when he fell from the ladder his neck felt like it was coming out of socket, his back ached, and he had pain down his leg and in his right arm. Plaintiff delayed seeking medical attention immediately after his injury because defendant-employer was in the midst of an attempt to earn a two million hour award. This award was given if defendant-employer had two million hours worked by employees without a reported injury.
18. In the weeks that followed the injury, plaintiff complained about his pain and to his supervisor and superintendent, Wayne Applewhite and David Clark. Mr. Applewhite and Mr. Clark accommodated plaintiff by giving him light duty maintenance to perform. Plaintiff continued to perform overtime as he had previously worked.
19. On April 12, 2001, plaintiff requested that he be provided medical treatment for the January 11, 2001 injury. Plaintiff was sent to Medac Medical Care. Daniel Shapiro, P.A., again examined plaintiff and indicated he had a back and neck strain. Plaintiff received conservative treatment and pain medications.
20. Plaintiff was subsequently referred to Dr. Tamadon for symptoms relating to his January 11, 2001 injury. Dr. Tamadon saw plaintiff on May 1, 2001 and diagnosed him with a contusion of the right lateral thorax with myofascial neck and mid-back pain.
21. Dr. Tamadon prescribed physical therapy and Vioxx for plaintiff. Plaintiff followed this course of treatment; however, the Vioxx irritated his stomach.
22. On May 22, 2001, plaintiff returned to Dr. Tamadon indicating the pain medication and physical therapy were not improving his condition. Dr. Tamadon found no evidence of a disc rupture and released plaintiff to return to work with his prior restrictions.
23. Plaintiff requested his employer allow him to see another doctor. Dr. Tamadon provided plaintiff a list of surgeons.
24. Greg Valentine and Mike Taylor, representatives of defendant-employer, indicated plaintiff could see his own physician and put the bill on his group health insurance.
25. On May 2, 2001, plaintiff met with David Clark and D. J. Russell who indicated that since he had been injured his job duties and job location would be changed. Plaintiff was informed he would no longer be able to perform maintenance on machines. Plaintiff would be permitted to sit in a chair and no longer do any standing, bending, stooping and climbing. Plaintiff was told not to speak to anyone on the job. Plaintiff was given a different route to enter the plant for plaintiff's protection. Plaintiff followed the instructions given by his supervisors and spent the majority of his time sitting in the chair and performing no duties.
26. Plaintiff's claim for his January 11, 2001 injury was initially denied. However, on September 20, 2002, defendant-employer stipulated plaintiff did sustain an injury by accident arising out of and in the course of his employment with defendant-employer on January 11, 2001.
27. Defendant-employer failed to provide plaintiff with medical treatment other than the treatment offered by Dr. Tamadon.
28. Plaintiff sought treatment from Dr. Mark Rodger on July 27, 2001. Dr. Rodger recommended an MRI and physical therapy. Plaintiff received physical therapy from Columbus Physical Therapy Associates upon Dr. Rodger's referral.
29. Dr. Rodger provided conservative treatment for plaintiff through November 15, 2001. At that time, plaintiff indicated he was having much more trouble with his neck than he had before. A second MRI was requested and the MRI revealed no surgical lesions. Plaintiff was referred by Dr. Rodger to Dr. Paul S. Chipley at the Center for Pain Management for evaluation and treatment. Dr. Rodger advised plaintiff not to return to work pending treatment by Dr. Chipley.
30. Plaintiff was treated by Dr. Chipley from December 19, 2001 through late January 2002. Plaintiff's treatment consisted of medication for pain and three (3) epidural steroid injections. The steroid injections were helpful to plaintiff and Dr. Rodger released plaintiff to return to work with a twenty (20) pound lifting restriction in late 2002.
31. Dr. Rodger assigned plaintiff a permanent partial disability rating of five (5%) percent to the cervical spine.
32. Dr. Rodger indicated the treatment plaintiff received from July 2001 through March 2002 was most likely related to plaintiff's work injury of January 11, 2001. Dr. Rodger's treatment did provide relief to plaintiff's symptoms. Even so, plaintiff has been unable to return to work because of the twenty (20) pound lifting restriction imposed by Dr. Rodger.
33. At the request of defendant-employer, plaintiff was again seen by Dr. Tamadon on March 15, 2002 concerning his return to work. At that time, Dr. Tamadon indicated plaintiff retained the work restriction of no lifting greater than thirty-five (35) pounds and avoiding repeated bending.
34. On March 16, 2002, plaintiff returned to work for defendant-employer in his regular job of mechanic. Plaintiff worked under the restriction of lifting no more than thirty-five (35) pounds, working no more than eight (8) hours a day, and engaging in no excessive bending or stooping.
35. As result of plaintiff's compensable injury by accident on January 11, 2001, plaintiff was totally disabled from November 16, 2001 through March 15, 2002 as prescribed by Dr. Rodger.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on January 11, 2001. N.C.G.S. § 97-2(6).
2. Plaintiff is entitled to receive temporary total disability compensation at the rate of $455.72 per week from November 16, 2001 through March 15, 2002. N.C.G.S. § 97-29.
3. Plaintiff is entitled to receive fifteen (15) weeks of permanent partial disability compensation at a rate of $455.72 for the five (5%) percent permanent impairment rating to his cervical spine. N.C.G.S. §97-31.
4. Plaintiff is entitled to receive medical treatment arising out of his compensable injury by accident on January 11, 2001 including treatment rendered by Dr. Mark Rodger, Dr. Paul Chipley, M.D., and Columbus Physical Therapy Associates. N.C.G.S. § 97-25.
5. In that defendant initiated this appeal and the Commission has found plaintiff is entitled to benefits pursuant to this claim, plaintiff is entitled to receive the costs of litigation incurred in defending this appeal before the Full Commission including reasonable attorney's fees. N.C.G.S. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation from November 16, 2001 through March 15, 2002 at a rate of $455.72 per week. Said amount shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
2. Defendant shall pay plaintiff permanent partial disability compensation for a period of fifteen (15) weeks at a rate of $455.72 per week for his five (5%) percent permanent partial disability to his back. Said amount shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
3. Plaintiff is entitled to receive reimbursement for the medical treatment provided by Mark Rodger, M.D., Paul Chipley, M.D., and Columbus Physical Therapy Associates.
4. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
5. In addition to the attorney's fees awarded to plaintiff's counsel in Paragraph 4, defendant shall pay directly to plaintiff's counsel an attorney's fee of $1,000.00 for costs associated with defending this appeal before the Full Commission.
6. Defendant shall pay the costs due the Commission.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER